UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

HOLTEC INTERNATIONAL,
HOLTEC INDIAN POINT 2, LLC,
HOLTEC INDIAN POINT 3, LLC, and
HOLTEC DECOMMISSIONING
INTERNATIONAL, LLC,

Civil Action No.:  24-cv-_____

**COMPLAINT**

*Plaintiffs,*

vs.

THE STATE OF NEW YORK,

*Defendant.*

-------------------------------------------------------X

Plaintiffs Holtec International, Holtec Indian Point 2, LLC, Holtec Indian Point 3, LLC, and Holtec Decommissioning International, LLC (hereinafter collectively referred to as "Holtec"), by and through their undersigned counsel, for their Complaint against Defendant The State of New York (hereinafter referred to as "the State") allege as follows:

### INTRODUCTION

1.      This case concerns the State's blatant infringement on the federal government's exclusive right to regulate the discharge of radioactive materials from nuclear power plants.

2.      The Atomic Energy Act of 1954, 42 U.S.C. § 2011, *et seq.* (hereinafter referred to as "Atomic Energy Act") grants the federal government exclusive responsibility for regulating radiological discharges from nuclear power plants.

3.      Despite that existing preemptive federal legislation, the State recently enacted a law prohibiting the discharge of radiological substances into the Hudson River.  *See* New York

4893-0435-4991

Environmental Conservation Law § 30-0103 (eff. Aug. 18, 2023) (hereinafter referred to as "ECL Article 30") ("To the extent not subject to preemption by federal law, and notwithstanding any other state or local law, rule, or regulation to the contrary, it shall be unlawful to discharge any radiological substance into the Hudson River in connection with the decommissioning of a nuclear power plant.").

4.      ECL Article 30 prohibits the discharge into the Hudson River of radioactive materials from Indian Point Nuclear Generating Unit No. 1 (hereinafter referred to as "Indian Point 1"), Indian Point Nuclear Generating Unit No. 2 (hereinafter referred to as "Indian Point 2"), and Indian Point Nuclear Generating Unit No. 3 (hereinafter referred to as "Indian Point 3," and collectively, with Indian Point 1, Indian Point 2, and Indian Point 3, "Indian Point").

5.      This is impermissible.  By allowing the State to regulate radiological discharges from a nuclear power plant, ECL Article 30 infringes on the exclusive authority of the federal government and the Nuclear Regulatory Commission (hereinafter referred to as the "NRC") under the Atomic Energy Act.  ECL Article 30 is federally preempted and must be set aside.

6.      Moreover, while enacting ECL Article 30, the State attempted to hide its efforts to regulate radiological health and safety under the guise of economic concerns.  This false pretense does not change the fact that the State is attempting to regulate matters with a direct effect on radiological safety.

7.      The State has taken it upon itself to regulate in a sphere reserved exclusively for the federal government, violating the doctrine of federal preemption.

2

8.     Whenever in this complaint it is alleged that the State committed any act or omission, it is meant that the State's representatives, legislators, or governing officials committed such act or omission and that at the time such act or omission was done with the full authorization, ratification, or approval of the State.

9.     To preserve the power of the federal government and the NRC under the Atomic Energy Act, Holtec seeks a declaratory judgment by this Court that ECL Article 30 is preempted by federal law.

## JURISDICTION AND VENUE

10.     This is a civil action seeking declaratory relief for federal preemption under the Atomic Energy Act and regulations adopted thereunder.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under federal law.

12.     Specifically, this action arises under the Supremacy Clause of the Constitution of the United States, U.S. Const. Art. VI, cl. 2, and the Atomic Energy Act and regulations adopted thereunder.

13.     Because an actual controversy within the Court's jurisdiction exists, this Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

14.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Holtec's claims occurred in this district.

4893-0435-4991

## THE PARTIES

15.     Plaintiff Holtec International is a Delaware corporation with its principal place of business in New Jersey.

16.     Plaintiff Holtec Decommissioning International, LLC is a Delaware limited liability company with its principal place of business in New Jersey.

17.     Plaintiff Holtec Decommissioning International, LLC is the NRC-licensed operator of Indian Point.

18.     Plaintiff Holtec Indian Point 2, LLC is a Delaware limited liability company with its principal places of business in New Jersey.

19.     Plaintiff Holtec Indian Point 2, LLC is the NRC-licensed owner of Indian Point 1 and Indian Point 2.

20.     Plaintiff Holtec Indian Point 3, LLC is a Delaware limited liability company with its principal places of business in New Jersey.

21.     Plaintiff Holtec Indian Point 3, LLC is the NRC-licensed owner of Indian Point 3.

22.     Defendant is the State of New York.

## STATUTORY AND REGULATORY BACKGROUND

23.     The Atomic Energy Act gave the U.S. Atomic Energy Commission "broad regulatory authority over the development of nuclear energy." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc.*, 435 U.S. 519, 525-526 (1978).  This authority was subsequently transferred to the NRC by the Energy Reorganization Act of 1974, 42 U.S.C. § 5801, *et seq.*

4

4893-0435-4991

24.     Congress' grant of authority to the NRC created a comprehensive regime for the management of nuclear materials and the civilian nuclear industry by the United States government.  As a result, "the Federal Government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 212 (1983).

25.     Congress "did not intend to provide for dual regulation of radiation hazards," and the "field of the licensing and regulation of nuclear reactors" was not ceded to the states. *N. States Power Co. v. Minn.*, 447 F. 2d 1143, 1151 (8th Cir. 1971), *aff'd*, 405 U.S. 1035 (1972).  As a result, the NRC has exclusive control over the discharge of effluents from nuclear power plants.  *Id.* at 1152.

26.     Consistent with this approach, Congress later left "full authority to regulate the materials covered by the [Atomic Energy Act]" with the NRC, preventing the states from exercising any authority over radioactive discharges into bodies of water covered under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the Clean Water Act (hereinafter referred to as the "CWA")).  *Train v. Colo. Pub. Int. Rsch. Grp., Inc.*, 426 U.S. 1, 15 (1976).

27.     While Congress allows the states "to regulate activities of [NRC] licensees for the manifold health, safety, and economic purposes other than radiation protection," *N. States Power Co.*, 447 F. 2d at 1151 (*quoting* Senate Report No. 870, reproduced in 1959 U.S. Code Cong. & Admin. News, p. 2872), the "state regulation of matters directly affecting the radiological safety of nuclear-plant construction and operation, 'even if enacted out of nonsafety concerns, would nevertheless [infringe upon] the NRC's exclusive authority.'"

5

*English v. Gen. Elec. Co.,* 496 U.S. 72, 84 (1990) (*quoting Pacific Gas*, 461 U.S. at 212).

Thus, "part of the [preempted] field is defined by the state law's actual effect on nuclear

safety," and a "state law [would] fall within the pre-empted zone," if it has "some direct and

substantial effect on the decisions made by those who build or operate nuclear facilities

concerning radiological safety levels." *English*, 496 U.S. at 84-85.

<u>**FACTUAL BACKGROUND**</u>

a.      **Indian Point**

28.      Indian Point, located in Buchanan, New York, was constructed and operated by

Consolidated Edison Co. of New York, Inc. under licenses issued by the NRC (and prior to the

NRC's creation, by the Atomic Energy Commission).

29.      Indian Point 1 began commercial operation in 1962 and was permanently shut

down in 1974.  Indian Point 2 began operating in 1973, and Indian Point 3 began operating in

1975.

30.      In 2021, Holtec Indian Point 2, LLC and Holtec Indian Point 3, LLC, affiliates

of Holtec International, acquired the equity interests in Indian Point1, Indian Point 2, and

Indian Point 3.

31.      The NRC licenses to own Indian Point were transferred to Holtec Indian Point

2, LLC and Holtec Indian Point 3, LLC, and the NRC licenses to operate Indian Point were

transferred to Holtec Decommissioning International, LLC.

32.      Indian Point 2 ceased operations in April 2020, and Indian Point 3 ceased

operations in April 2021.  Indian Point is now being decommissioned by Holtec.

33.      Indian Point includes spent fuel pools, which are being decommissioned.

4893-0435-4991

34.     On November 23, 2020, Holtec received approval from the NRC to assume ownership and operation of Indian Point, including responsibility for decommissioning. Decommissioning Indian Point necessarily involves disposing of the plant structures themselves and the water remaining from power plant operations and spent nuclear fuel pool storage.  That water is radioactive from the operation of the power plants and the storage of spent nuclear fuel.  The water will be treated to remove radioactive materials but will still include tritium, a radioactive isotope of hydrogen which cannot be removed.

35.     Tritiated water is regularly released by operating reactors and has been released on numerous occasions from Indian Point in accordance with NRC regulations.

36.     Holtec's plan to treat and dispose of the tritiated wastewater in the Hudson River from Indian Point fully satisfies NRC regulations and is well within federal limits on radiological discharges.

**b.     Legislative History of ECL Article 30**

37.     The legislation that ultimately became ECL Article 30 was first introduced into the New York State Senate by State Senator Peter Harckham (hereinafter referred to as "Sen. Harckham") on February 24, 2023.  It prohibited the discharge of radiological agents into waters of the state.  *See* S. 5181, 2023-2024 Reg. Sess. (N.Y. 2023).  Notably, that bill's explicit justification was the protection of drinking water and health and safety, with corollary economic concerns.  *See* S. 5181, 2023-2024 Reg. Sess. (N.Y. 2023); *see also* Sponsor Mem. of Sen. Harckham (February 24, 2023), available at https://www.nysenate.gov/legislation/bills/2023/S5181 (last accessed April 14, 2024) ("The Hudson river serves as a drinking water source for over 100,000 New Yorkers.  The potential

7

release of radioactive contaminants to our state's most influential river is an urgent matter to the residents of Peekskill and all other communities along the tidal estuary.  Exposure to toxic substances and radioactive material poses not only a possible health risk, but also a serious economic risk to our communities with potential negative impacts on real estate values.  To protect the health and economic well being of its residents, New York must take a strong stance against radiological dumping into state waters.").

38.     The next week, on March 1, 2023, Sen. Harckham and Assembly Member Dana Levenberg (hereinafter referred to as "Mem. Levenberg") issued a press release touting the legislation and removing all references to drinking water, toxic substances, health risks and the health and well being of New Yorkers.  *See* P. Harckham, *Harckham and Levenberg Introduce Bill to Ban Release of Radioactive Waste into the Hudson River* (Mar. 1, 2023), available at https://www.nysenate.gov/newsroom/press-releases/2023/pete-harckham/harckham-and-levenberg-introduce-bill-ban-release (last accessed April 14, 2024).

39.     After several iterations, on August 18, 2023, the bill, passed by both houses, was delivered to Governor Hochul.  *See* A. 7208, 2023-2024 Reg. Sess. (N.Y. 2023); S. 6893, 2023-2024 Reg. Sess. (N.Y. 2023).  This revised bill cited only economic concerns and omitted all prior references to the health of New Yorkers and safety of drinking water.  *Id.*

40.     On or about August 18, 2023, Governor Hochul signed ECL Article 30 into law, making it "unlawful to discharge any radiological substance into the Hudson River in connection with the decommissioning of a nuclear power plant."  ECL Article 30.

41.     Indian Point is the only nuclear power plant discharging radiological substances into the Hudson River in connection with decommissioning a nuclear power plant.

42.     ECL Article 30 would force Holtec to choose an alternative method of disposal for tritiated water, even if it is less protective of public health and safety, even if the discharge of the tritiated water to the Hudson River would meet the NRC's regulations, and notwithstanding that Indian Point has discharged millions of gallons of tritiated water per year into the Hudson River for over 50 years as recognized in the Senate debates.  *See* S. 205-6459, Reg. Sess., at 6776-6777 (N.Y. 2023).

## CLAIM FOR RELIEF

43.     Paragraphs 1 through 42 are incorporated herein as if set forth in full.

44.     The federal government has occupied the entire field of nuclear safety, through the NRC, except for rights expressly reserved for the states.

45.     Congress kept NRC control over radiological discharges to bodies of water and did not cede rights to control those discharges to the Environmental Protection Agency or states in the CWA.

46.     State regulation of matters directly affecting radiological safety of a nuclear power plant are federally preempted regardless of the State's motive.

47.     ECL Article 30 directly regulates both radiological discharges into the Hudson River and matters affecting radiological safety of a nuclear power plant.

48.     ECL Article 30 has a direct impact on Holtec's decision to dispose of radiological effluents by limiting Holtec's available options.

49.     As a result, ECL Article 30 is federally preempted, and this Court should enter a declaratory judgment that ECL Article 30 is preempted.

9

## **PRAYER FOR RELIEF**

WHEREFORE, Holtec respectfully prays that the Court:

a.    Declare that ECL Article 30, signed into law by Governor Hochul on August

18, 2023, is unconstitutional pursuant to the Supremacy Clause of the Constitution and 28

U.S.C. § 2201 as applied to Holtec or their officers or employees and is preempted by federal

law;

b.    Assess the costs of this litigation against the State; and

c.    Grant Holtec such other relief as the Court deems just and proper.


Dated: April 18, 2024
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP


By:_____
            James M. Catterson
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax: 212.858.1500
james.catterson@pillsburylaw.com

Jay E. Silberg (*pro hac vice application forthcoming*)
Anne Leidich (*pro hac vice application forthcoming*)
1200 17th St. NW
Washington, DC 20036
jay.silberg@pillsburylaw.com
anne.leidich@pillsburylaw.com

*Attorneys for Plaintiffs Holtec International, Holtec*
*Indian Point 2, LLC, Holtec Indian Point 3, LLC,*
*and Holtec Decommissioning International, LLC*

4893-0435-4991