UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOLTEC INTERNATIONAL; HOLTEC INDIAN POINT 2, LLC; HOLTEC INDIAN POINT 3, LLC; HOLTEC DECOMMISSIOINING INTERNATIONAL LLC,<br><br>                              Plaintiffs,<br><br>          v.<br><br>THE STATE OF NEW YORK,<br><br>                              Defendant. | Case No.<br>24-cv-02929-KMK<br><br>**ANSWER<br>AND COUNTERCLAIM** |

Defendant The State of New York, by Letitia James, Attorney General of the State of New York, answers the complaint and counterclaims herein as follows:

## **INTRODUCTION**

1.      The State denies the allegations of paragraph 1 of the complaint.

2.      The State denies the allegations of paragraph 2 of the complaint.

3.      The State denies the allegation of paragraph 3 of the complaint that there is existing preemptive federal legislation, but otherwise admits the remaining allegations of that paragraph.

4.      The State denies the allegations of paragraph 4 of the complaint, but admits that ECL Article 30 prohibits the discharge of any radiological substance from Indian Point into the Hudson River in connection with the decommissioning of Indian Point.

1

5. The State denies the allegations of paragraph 5 of the complaint.

6. The State denies the allegations of paragraph 6 of the complaint.

7. The State denies the allegations of paragraph 7 of the complaint.

8. The State denies the allegations of paragraph 8 of the complaint that the State committed any illegal act or omission.

9. As to paragraph 9 of the complaint, the State lacks knowledge or information sufficient to form a belief about the truth concerning Holtec's motivation for seeking a declaratory judgment in this action.

## JURISDICTION AND VENUE

10. Paragraph 10 of the complaint is a characterization of this action to which no response by the State is required.

11. The State admits the allegations of paragraph 11 of the complaint.

12. Paragraph 12 consists of legal conclusions to which no response is required, and the State respectfully refers the Court to the cited constitutional, statutory, and regulatory provisions to determine their content, meaning and effect.

13. Paragraph 13 consists of legal conclusions to which no response is required, and the State respectfully refers the Court to the cited statutory provisions to determine their content, meaning and effect.

14. The State admits the allegations of paragraph 14 of the complaint.

## THE PARTIES

15. The State admits the allegations of paragraph 15 of the complaint.

16. The State admits the allegations of paragraph 16 of the complaint.

17. The State admits the allegations of paragraph 17 of the complaint.

18. The State admits the allegations of paragraph 18 of the complaint.

19. The State admits the allegations of paragraph 19 of the complaint.

20. The State admits the allegations of paragraph 20 of the complaint.

21. The State admits the allegations of paragraph 21 of the complaint.

22. The State admits the allegations of paragraph 22 of the complaint.

## STATUTORY AND REGULATORY BACKGROUND

23. Paragraph 23 consists of legal conclusions to which no response is required, and the State respectfully refers the Court to the cited authorities to determine their content, meaning and effect.

24. The State denies the allegations of the first sentence of paragraph 24 of the complaint. The second sentence of the paragraph consists of legal conclusions to which no response is required, and the State respectfully refers the Court to the cited case to determine its content, meaning and effect.

25. The State denies the allegations of paragraph 25 of the complaint. Paragraph 25 also includes legal conclusions to which no response is required, and the State respectfully refers the Court to the cited case to determine its content, meaning and effect.

26. The State denies the allegations of paragraph 26 of the complaint. Paragraph 26 also includes legal conclusions to which no response is required, and the State respectfully refers the Court to the cited case to determine its content, meaning and effect.

27. Paragraph 27 consists of legal conclusions to which no response is required, and the State respectfully refers the Court to the cited authorities to determine their content, meaning and effect.

## FACTUAL BACKGROUND

### a. Indian Point

28. The State admits that Indian Point is located in the Village of Buchanan, New York; that the facility's three reactors were each constructed and operated under licenses from the NRC or its predecessor agency; and that Consolidated Edison or the New York Power Authority (or its predecessor) built the three reactors. The State otherwise denies the allegations in paragraph 28.

29. The State admits the allegations of paragraph 29 of the complaint.

30. The State admits the allegations of paragraph 30 of the complaint.

31. The State admits the allegations of paragraph 31 of the complaint.

32. The State admits the allegations of paragraph 32 of the complaint.

33. The State admits the allegations of paragraph 33 of the complaint.

34. The State admits the allegations of paragraph 34 of the complaint.

35. The State lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 35 of the complaint.

36. The State lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 36 of the complaint.

### b.     Legislative History of ECL Article 30

37. The State denies the allegations of the first and third sentences of paragraph 37 of the complaint, admits the allegations of the second sentence, and respectfully refers the Court to the cited Senate Bill and Sponsor's Memorandum to determine their content, meaning and effect.

38. The State denies the allegations of paragraph 38 of the complaint and respectfully refers the Court to the cited press release to determine its content, meaning and effect.

39. As to paragraph 39 of the complaint, the State admits that A. 7208/S. 6893 was passed by both houses of the State Legislature on August 18, 2023, denies the remaining allegations of the paragraph, and respectfully refers the Court to the cited bill to determine its content, meaning and effect.

40. The State admits the allegations of paragraph 40 of the complaint.

41. The State admits the allegations of paragraph 41 of the complaint.

42. The State denies the allegations of paragraph 42 of the complaint.

### CLAIM FOR RELIEF

43. The State incorporates herein its responses to the allegations in paragraphs 1 through 42 of the complaint as if set forth in full.

44. The State denies the allegations of paragraph 44 of the complaint.

45. As to the allegations of paragraph 45 of the complaint, the State admits that NRC (and not EPA) regulates radiological discharges to bodies of water on the federal level, but denies that states lack any authority to also regulate them.

46. As to the allegations of paragraph 46 of the complaint, the State admits that state regulation of matters affecting radiological safety of a nuclear power plant during the construction or operation of the plant are federally preempted regardless of the state's motive. The State otherwise denies the allegations of paragraph 46.

47. As to the allegations of paragraph 47 of the complaint, the State admits that ECL Article 30 directly regulates radiological discharges into the Hudson River, but otherwise denies the allegations of the paragraph.

48. As to the allegations of paragraph 48 of the complaint, the State admits that ECL Article 30 prevents Holtec from discharging radiological substances into the Hudson River but otherwise lacks knowledge or information sufficient to form a belief about the truth concerning Holtec's decision to dispose of radiological effluents.

49. The State denies the allegations of paragraph 49 of the complaint.

## **PRAYER FOR RELIEF**

50. The Prayer for Relief consists of requests for relief to which no response is required.

## **DEFENSES**

Without limiting or waiving any other defenses available to it, the State asserts the following defenses to the complaint:

51. Plaintiffs have failed to allege or show standing to sue the State.

52. Plaintiffs have failed to state a claim upon which relief can be granted.

## COUNTERCLAIM

## NATURE OF THE ACTION

1. This case is about a newly enacted New York statute, Environmental Conservation Law Article 30, that prohibits the discharge of radiological substances into the Hudson River during the decommissioning of the Indian Point nuclear power plant in Buchanan, New York (Discharge Law).

2. The State of New York asserts this counterclaim to obtain a judicial declaration that the Discharge Law is not preempted by the federal Atomic Energy Act (AEA).

3. The purpose of the Discharge Law is to address the "adverse and substantial economic impacts on the state and its residents" of discharges of radiological substances into the Hudson River during the decommissioning of Indian Point.

4. The Discharge Law does not run afoul of the AEA because its purpose is economic, and not to achieve radiological safety. Additionally, regardless of purpose it applies during decommissioning, and there is no evidence that it will have an actual effect on nuclear safety.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under federal law, the Supremacy Clause of the Constitution of the United States, U.S. Const. Art. VI, cl. 2, and the AEA.

6. This action is "a case of actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C.§ 2201(a).

7. Venue is proper within the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

8. Counterclaim plaintiff State of New York is a body politic and sovereign state of the United States of America and brings this counterclaim in its sovereign and proprietary capacities and in its quasi-sovereign capacity as parens patriae on behalf of its residents and citizens.

9. Plaintiff Holtec International is a Delaware corporation with its principal place of business in New Jersey.

10. Plaintiff Holtec Decommissioning International, LLC is a Delaware limited liability company with its principal place of business in New Jersey.

11. Plaintiff Holtec Decommissioning International, LLC is the NRC-licensed operator of Indian Point.

12. Plaintiff Holtec Indian Point 2, LLC is a Delaware limited liability company with its principal places of business in New Jersey.

13. Plaintiff Holtec Indian Point 2, LLC is the NRC-licensed owner of Indian Point 1 and Indian Point 2.

14. Plaintiff Holtec Indian Point 3, LLC is a Delaware limited liability company with its principal places of business in New Jersey.

15. Plaintiff Holtec Indian Point 3, LLC is the NRC-licensed owner of Indian Point 3.

## STATUTORY AND REGULATORY FRAMEWORK

**A.** **The AEA**

16. The AEA creates a "dual regulation" of nuclear-powered electricity generation, with nuclear safety as the province of the federal government, and all other matters as the province of the States.

17. Under the AEA, the Nuclear Regulatory Commission (NRC) regulates the radiological safety of nuclear facilities, and states retain jurisdiction over issues beyond the scope of NRC's authority, such as, but not limited to, questions about rates, costs, or economics.

18. Under the AEA, the NRC's authority over construction and operation of a nuclear power plant does not impair the State's strong quasi-sovereign interest in its residents' economic wellbeing. Under the AEA, 42 U.S.C. § 2021(k): 'Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards."

19. Even if a state law is intended to address radiological safety in addition to economics, that indirect safety purpose does not necessarily mean that the law is preempted. Legislative purpose is only relevant to preemption of laws that involve "core federal powers," such as state regulation of the construction or operation of a nuclear power plant.

20. Disposition of a nuclear power plant's post-electricity generation wastewater to a river during the plant's decommissioning does not rise to the level of a "core federal power."

21. Preemption should be disfavored during the decommissioning phase of a nuclear power plant's life in order to maintain the proper balance in the "dual" federal-state regulatory structure. 10 C.F.R § 50.75(a), an NRC regulation, provides that states may regulate funding for reactors' decommissioning to "provide reasonable assurance that funds will be available for the decommissioning process."

22. During decommissioning, as opposed to the electricity generation phase, states receive no benefit from the generation of electricity and must also bear the financial risk that adequate funds will not be available for plant decommissioning. If decommissioning funds are inadequate, despite NRC regulations that purport to address this concern, states may be left holding the financial "bag."

23. During decommissioning, a state's economic interests outweigh the NRC's interests in nuclear safety, and state laws furthering a state's economic interests are not preempted.

**B.    New York Environmental Conservation Law, Article 30**

24. On August 18, 2023, New York's Governor Hochul signed a bill creating a new article in the New York Environmental Conservation Law (ECL), addressing discharges of radioactive substances into the Hudson River. ECL § 30-0103, entitled "Unlawful discharges," provides: "To the extent not subject to preemption by federal law, and notwithstanding any other state or local law, rule, or regulation to the

10

contrary, it shall be unlawful to discharge any radiological substance into the Hudson River in connection with the decommissioning of a nuclear power plant."

25. The purpose of ECL § 30- 0103 is to protect the economic interests of the State's residents in the Hudson Valley. In enacting this provision, the State Legislature issued the following findings:

> 1. The legislature finds that while the energy and economic output generated by nuclear power plants are beneficial to the state and its residents, discharges into waters of the state of radiological agents from nuclear power plants have various adverse and substantial economic impacts on the state and its residents.
> 2. The legislature further finds that communities with interests in the Hudson River are concerned with the economic impacts on local real estate values and economic development with respect to the discharge of waste from nuclear power plants into waters of the state during plant decommissioning, which effect is no longer balanced by countervailing economic benefits of the plant to those communities that the plant provided during operation.
> 3. The legislature further finds that other methods of managing waste from decommissioning nuclear power plants are available and would not result in the same economic impacts.
> 4. The legislature therefore finds and declares that it is the duty of the state to act to preserve the economic vitality of affected communities.

ECL § 30-101.

26. The sponsors' memoranda for the Discharge Law are consistent with that economic purpose. Dana D. Levenberg, Assembly sponsor of the bill, wrote in her memorandum: "The discharge of nuclear waste into the Hudson River poses a substantial risk to real estate values and the economic development of those communities along the river."

27. The memorandum of Peter Harckham, the Senate sponsor of the bill, stated: "Discharging radiological chemicals from nuclear power plants into our most

11

influential water source has a multitude of adverse and substantial economic impacts on the state and its residents. . . . It is the duty of New York State to preserve the economic wellbeing of our communities, and this bill is targeted to achieve that end."

## STATEMENT OF FACTS

28. Indian Point Energy Center is a former nuclear power generation facility in Buchanan, Westchester County, New York, on the east bank of the Hudson River approximately twenty-five miles north of New York City. (Indian Point). Indian Point had three pressurized water reactor units: Indian Point 1, operated commercially from August 1962 to October 1974; Indian Point 2, licensed September 1973, with power generation operations terminated April 30,2020; and Indian Point 3, licensed December 1975, with power operations terminated April 30, 2021). *See.* New York Public Service Commission, CASE 19-E-0730 – *Matter of Joint Petition of Entergy Nuclear Indian Point 2, LLC; Entergy Nuclear Indian Point 3, LLC; and Nuclear Asset Management Company, LLC for a Declaratory Ruling Disclaiming Jurisdiction Over or Abstaining from Review of the Proposed Transfers or, in the Alternative, an Order Approving the Proposed Transfers Pursuant to Section 70 of the New York Public Service Law, Order Asserting Jurisdiction and Approving and Adopting Joint Proposal* (Issued and Effective May 19, 2021) (hereinafter PSC Order) at 2-6.29.

29. In addition to the three power reactor units, the Indian Point Energy Center had other critical infrastructure components to support power generation, including three spent fuel pools that store spent nuclear fuel rods and assemblies.

Indian Point also has a dry cask storage facility (known as an Independent Spent Fuel Storage Installation or ISFSI), which is used for the long-term storage of spent nuclear fuel after residing in the spent fuel pools. Additional on-site structures house support equipment such as cooling water intake systems, discharge and outflow systems, meteorology and emissions monitoring equipment, security systems, transformers, and diesel generators. Two natural gas transmission pipelines also cross the Site. *See* PSC Order at 2.

30. Indian Point Units 2 and 3 were licensed to operate in the 1970s for forty-year terms, when Consolidated Edison owned all three Indian Point reactors. The predecessor of the New York Power Authority acquired the licensed and partially-completed Indian Point Unit 3 from Consolidated Edison in 1975. In 2000, Entergy bought Unit 3 from the Power Authority and acquired Unit 2 from Consolidated Edison in 2001. Id. PSC Order at 4.

31. In 2017, to resolve ongoing litigation related to the proposed renewal of Indian Point's NRC operating license for Units 2 and 3, facility owner Entergy Nuclear Indian Point entered into a settlement and facility closure agreement with the State of New York, several New York State agencies, and the environmental group Riverkeeper among others. As specified in the agreement, Unit 2 permanently ceased generating electric power on April 30, 2020, and Unit 3 permanently ceased generation on April30, May 2021. Entergy confirmed the permanent removal of fuel from the IP Unit 3 reactor on May 11. 2021. The closure agreement intended that

the Unit 2 and Unit 3 spent fuel pools would remain, as would the on-site dry cask ISFSI.  PSC Order at 6.

32. Prior to the Unit 3 shutdown, on April 16, 2019, Entergy Nuclear Indian Point and plaintiff Holtec International announced an agreement whereby Entergy would sell Indian Point to a Holtec-created affiliate for decommissioning following the 2021 Unit 3 shutdown and removal of the fuel from the reactor. Entergy sought NRC approval to sell Indian Point Energy Center and for the transfer of the Indian Point licenses to a decommissioning contractor for radiological decommissioning and site restoration.

33. The State of New York initially opposed the license transfer application and following negotiations with Holtec and Entergy regarding the necessary administrative approvals, the State and parties to the transaction reached agreement regarding license, facility and asset transfer from Entergy to Comprehensive Decommissioning International (CDI).  This included title to the facility, spent fuel, decommissioning liabilities, and the decommissioning trust funds for Units 2 and 3, as well as the long-shuttered Unit 1.

34. Of particular concern to the State, the trust funds are the sole source of funding for the decommissioning process, which covers decontamination of the reactor vessels and other plant infrastructure, demolition of the facility, proper disposal and site remediation.  These trust funds were funded in part by electricity ratepayers in New York though their payments for electricity. The trust funds were created pursuant to NRC regulation, and New York PSC-approved utility

assessments, to ensure that the plant's owners would have the resources needed to safely decommission the facilities and restore the Site to greenfield status. See PSC Order at 7, 10

35. In an effort to ensure that Holtec would have sufficient resources to carry out decommissioning, the State reached agreement with Holtec and others governing the maintenance of minimum balances in the decommissioning trust funds over time. That agreement was incorporated into the PSC Order approving the transfer of Indian Point to Holtec.

36. Following removal of the fuel rods and assemblies from the spent fuel pools and placement in dry cask storage, a process that was completed ahead of schedule in October 2023, Holtec must address disposition of approximately 1.3 million gallons of treated wastewater from the Unit 2 and Unit 3 spent fuel pools. After on-site treatment to remove contaminants, the treated spent fuel pool and process water will contain approximately 400 curies of tritium, a radioactive isotope of hydrogen. Indian Point currently holds 310,000 gallons of tritiated water from Unit 2 and 1,030,000 gallons of tritiated water from Unit 3.

37. Holtec has not alleged or shown that prohibiting discharges of the tritiated water from Units 2 and 3 of Indian Point into the Hudson River would have an actual effect on nuclear safety.

## **CLAIM FOR RELIEF**

38. The State realleges paragraphs 1 through 37 above as if fully set forth herein.

39. The Discharge Law serves an economic purpose.

40. Indian Point produces no energy.

41. Indian Point is not in the process of construction or operation.

42. Indian Point is in the process of decommissioning.

43. The State has jurisdiction to prohibit for economic purposes discharges of radiological substances from Indian Point into the Hudson River during its decommissioning.

44. The Discharge Law does not implicate a "core federal power" within the meaning of the AEA.

45. The State has jurisdiction to prohibit discharges of radiological substances from Indian Point into the Hudson River during its decommissioning regardless of its purpose.

46. During decommissioning of Indian Point, as opposed to the plant's operational or electricity generation phase, the State receives no benefit from the generation of electricity and must also bare the financial risk that adequate funds will not be available for plant decommissioning.

47. During decommissioning, a state's economic interests outweigh the NRC's interests in nuclear safety, and state laws furthering a state's economic interests are not preempted.

48. There is no evidence that prohibiting discharges of the tritiated water from Units 2 and 3 of Indian Point into the Hudson River would have an actual effect on nuclear safety.

49. The Discharge Law is not preempted by the AEA.

## PRAYER FOR RELIEF

WHEREFORE, the State respectfully requests that the Court enter judgement:

a. Dismissing plaintiffs' complaint;

b. Declaring that the Discharge Law is not preempted under federal law;

c. Assessing the costs of this litigation against plaintiffs; and

d. Granting the State such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 23, 2024

> LETITIA JAMES
> Attorney General
> State of New York
> *Attorney for Defendant the State of New York*
>
> By: */s/ Philip Bein*
> Philip Bein (PB1742)
> Senior Counsel
> New York State Office of the Attorney General
> Environmental Protection Bureau
> 28 Liberty Street, 19th Floor
> New York, NY 10005
> (212) 416-8797
> Philip.Bein@ag.ny.gov

Of Counsel:
 Lemuel Srolovic